IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>vs.<br><br>GAUTAM ADANI and SAGAR ADANI,<br><br>         Defendants. | No. 1:24-cv-08080 (NGG) (JRC) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION
FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE METHODS**

Christopher M. Colorado
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004

*Counsel for Plaintiff
Securities and Exchange Commission*

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum in support of its motion under Federal Rule of Civil Procedure 4(f)(3) to serve Defendants Gautam Adani and Sagar Adani with the Summons and Complaint through two alternative methods: (1) by delivery of the Summons and Complaint to their U.S. counsel, who represent them in connection with this matter; and (2) by email to Defendants' respective business addresses.

## PRELIMINARY STATEMENT

Approximately fourteen months ago, the SEC filed charges against Defendants Gautam Adani and Sagar Adani, prominent Indian business leaders, arising from a $750 million bond offering that raised $175 million from U.S. investors. Since then, Defendants have retained three U.S. law firms and issued multiple public statements denying the SEC's allegations, and their companies have filed regulatory disclosures acknowledging this lawsuit. Meanwhile, India's Ministry of Law and Justice has twice refused to effect service on Defendants under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention" or "Convention") in response to the SEC's requests.

Defendants know about this case and are managing their response to it. The Court should therefore authorize alternative service under Federal Rule of Civil Procedure 4(f)(3): delivery to Defendants' U.S.-based counsel and email to Defendants' business addresses. Both methods will apprise the Defendants of this action even though the Defendants, who, directly or through their affiliated companies, are already responding publicly to it.

## FACTS

**A.   Background**

On November 20, 2024, the SEC filed its Complaint alleging that Defendants Gautam Adani and Sagar Adani, executives of Adani Green Energy Ltd. ("Adani Green"), engaged in

securities fraud in connection with a $750 million bond offering that raised over $175 million from U.S. investors. (ECF No. 1, ¶¶ 1-3, 127-130.) The Complaint alleges that Defendants made or authorized false and misleading statements about Adani Green's anti-corruption and anti-bribery programs while participating in a bribery scheme involving payments or promises of payments totaling hundreds of millions of dollars to Indian government officials. (*Id.* ¶¶ 4, 5, 62-88, 101-126.)

Within days, Defendants—who reside in India—began responding publicly. On November 21, 2024, the Adani Group, a conglomerate founded by Gautam Adani which includes Adani Green, issued a press release denying the SEC's allegations. (Colorado Aff. ¶ 2 & Ex. A.)[1] .) On November 27, 2024, Adani Green filed a regulatory disclosure with the National Stock Exchange of India, acknowledging the SEC's complaint. (*Id.* ¶ 3 & Ex. B.) Three days later, Gautam Adani commented on this litigation during his remarks at an awards ceremony in Jaipur, India. (*Id.* ¶ 4.) In April 2025, Adani Green said in a regulatory filing that it had completed an "independent review" of the SEC's allegations and "did not identify any non-compliances or irregularities in the matter." (*Id.* ¶ 5 & Ex. C, at 43-44 ¶ 8.) In June 2025, Gautam Adani again commented on this litigation during his remarks at the Adani Group's annual meeting. (*Id.* ¶ 6.)

Defendants also retained three U.S. law firms. Sagar Adani hired Hecker Fink LLP, which confirmed its representation to the SEC in connection with this matter, on December 4, 2024. (*Id.* ¶ 15.) Gautam Adani retained both Kirkland & Ellis LLP and Quinn Emanuel

---

[1] "Colorado Aff. ¶ __" and "Colorado Aff. Ex. __" refer to the Affirmation of Christopher M. Colorado, filed herewith, and exhibits to that Affirmation.

Urquhart & Sullivan LLP, whose attorneys contacted the SEC on February 28, 2025, and identified themselves as counsel for Gautam Adani in connection with this matter. (*Id.* ¶ 18.)

This case has generated widespread international media coverage, as Defendants are prominent public figures in India. (*Id.* ¶ 7 & Exs, D, E.) Major outlets, including the New York Times and the Times of India, have reported on the SEC's allegations, the parallel criminal case filed by the U.S. Attorney's Office for the Eastern District of New York against Defendants and others, *United States v. Adani, et al.*, 24-cr-433-NGG, and the SEC's efforts to serve Defendants with the Summonses and Complaint in this matter. (*See id.*)

**B.     The SEC's Efforts to Serve Defendants Under the Hague Convention.**

Because both Defendants reside in India and India does not permit service of process by mail or personal delivery, the SEC submitted a formal request for assistance under the Hague Convention on February 17, 2025. The request was sent to India's Ministry of Law and Justice, Department of Legal Affairs ("Ministry")—India's designated Central Authority for Hague Convention matters—and included Forms USM-94 ("Request for Service Abroad of Judicial or Extrajudicial Documents") and the Summonses and Complaint. (*Id.* ¶ 8 & Exs. F, G ("Requests").) The SEC asked the Ministry to serve these documents on Defendants at their last known addresses, as listed in Adani Green's public filings in India. (*Id.*)

On April 1, 2025, the SEC received letters confirming that the Ministry had forwarded the Requests to the relevant Indian state authorities with instructions to effect service. (*Id.* ¶ 9 & Exs. H, I.) Two days later, the SEC's Office of International Affairs ("OIA") requested a status update from the Ministry. (*Id.* ¶ 10 & Ex. J.) On May 1, 2025, the Ministry declined to effect service, citing the absence of an ink signature on the SEC's cover letter and a seal on the Forms USM-94 (*id.* ¶ 11 & Exs. K, L.)—neither of which is required under the Hague Convention. The SEC replied, clarifying that the Hague Convention requires neither a cover

letter (signed or otherwise) nor a seal on the Model Form, and resubmitted its request for assistance, including Forms USM-94 and the Summonses and Complaint. (*Id.* ¶ 12 & Ex. M.)

After the SEC sent another status inquiry on September 12, 2025 (*id.* ¶ 13 & Ex. N), the Ministry again declined to effect service (*Id.* ¶ 14 & Exs. O, P). On December 14, 2025, the SEC received letters from the Ministry citing 17 C.F.R. § 202.5(b)—a regulation authorizing the SEC to initiate enforcement actions or refer matters to the Department of Justice and self-regulatory organizations—and asserting that the regulation does not reference a "summons." (*Id.*) The Ministry appeared to suggest that the SEC lacks authority to invoke the Hague Convention or seek service of the Summonses. This objection has no basis in the Convention, which governs service procedures, not the SEC's underlying authority to bring enforcement actions.

Given the Ministry's position, and the time elapsed since service was first attempted pursuant to the Hague Convention, the SEC does not expect service to be completed through the Hague Convention. The SEC is unaware of any alternative means of serving Defendants under Indian or international law.

C. **The SEC Attempted to Obtain Waivers of Service.**

The SEC attempted to obtain voluntary waivers of personal service from both Defendants. On February 7, 2025, SEC counsel sent Sagar Adani's attorney the Summons and Complaint via email and overnight courier, requesting a waiver. (*Id.* ¶ 16.) Counsel did not respond. (*Id.*) On February 18, 2025 (approximately ten days before Gautam Adani's counsel identified itself to the SEC), SEC counsel emailed Gautam Adani directly with the same request. Again, the SEC did not receive a response. (*Id.* ¶ 17.)

# ARGUMENT

## I. Rule 4(f)(3) Permits Alternative Service When Hague Convention Efforts Have Failed.

Federal Rule of Civil Procedure 4(f) provides three equally valid methods for serving individuals in foreign countries: Subsection (1) permits service under international agreements, like the Hague Convention; subsection (2) permits service by personal delivery or registered mail where permitted; and subsection (3) permits court-ordered alternative service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(1)-(3).

Rule 4(f)(3) "stands independently on equal footing" with the other subsections and "is not a last resort or extraordinary relief" but "merely one means among several." *Long v. MTN Grp. Ltd.*, No. 23-cv-5705, 2024 WL 4664619, at *4 (E.D.N.Y. Sept. 30, 2024); *SEC v. Anticevic*, No. 05-cv-6691, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citing *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). The Rule grants district courts "broad discretion to tailor service methods to the needs of the particular case." *SEC v. Shehyn*, No. 04-cv-2003, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008).

Some courts require an initial attempt at effecting service through the Hague Convention before authorizing alternate methods when the defendant resides in a signatory country. *See id.* at *2 (citing *Burdia Media, Inc. v. Viertel*, 417 F.3d 292, 299-300 (2d Cir. 2005)); *but see GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("[N]othing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)."). In those cases, courts authorize Rule 4(f)(3) service by alternative methods when plaintiffs have made reasonable efforts to attempt service under the Hague Convention but "the foreign country's central authority has been unwilling or unable to effect

service." *Long*, 2024 WL 4664619, at *7; *U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, No. 02-cv-1168, 2010 WL 423247, at *3 (E.D. Va. Feb. 4, 2010) (permitting alternative service after Germany declined Hague Convention service).

The SEC has satisfied this standard. It submitted formal service requests to the Ministry—India's Central Authority—eleven months ago, sought periodic updates, and resubmitted the Requests when the Ministry raised procedural objections. The Ministry twice declined to serve: first citing cover letter and seal requirements not found in the Hague Convention, then invoking 17 C.F.R. § 202.5(b)—a regulation governing the SEC's enforcement authority that has no bearing on Hague Convention procedures. These responses demonstrate that further attempts through the Hague Convention are unlikely to succeed and therefore warrant granting leave for alternative service under Rule 4(f)(3).

**II.** **Service on Defendants' U.S. Counsel and by Email Will Provide Effective Notice.**

The SEC's proposed methods are routinely approved under Rule 4(f)(3) and satisfy due process. Courts authorize alternative service when the methods are "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action" and are not prohibited by international agreement. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). Here, Defendants have retained U.S. law firms to represent them in this litigation, used the proposed email addresses for business communications, and already know about the lawsuit. Service by the SEC's proposed alternative methods is therefore appropriate.

    **A.** *Service on U.S. Counsel is Routinely Approved When Counsel Represents the Defendant in the Matter.*

Courts routinely approve service on a foreign defendant's U.S. counsel where that counsel represents the defendant and is reasonably expected to convey notice. *See Carrillo v. Sabbadini*, No. 23-cv-5692 (VSB), 2025 WL 304446, at *2 (S.D.N.Y. Jan. 27, 2025) ("Service

on a foreign defendant's U.S. counsel is appropriate where that U.S. counsel will inform the foreign defendant of the case."); *In GLG Life*, 287 F.R.D. at 267 (collecting cases). An attorney "already representing [the defendant] is not likely to disregard receipt of service of process." *U.S. v. Machat*, No. 08-cv-7936 (JGK), 2009 WL 3029303, at *4 (S.D.N.Y. Sept. 21, 2009).

The facts here strongly support service on counsel. Sagar Adani retained Hecker Fink LLP, whose attorney confirmed its representation of him in this matter to the SEC on December 4, 2024. (Colorado Aff. ¶ 15.) Gautam Adani retained both Kirkland & Ellis LLP and Quinn Emanuel Urquhart & Sullivan LLP, and attorneys from both firms contacted the SEC on February 28, 2025, identifying themselves as counsel for Gautam Adani in this matter. (*Id.* ¶ 18.) These communications with the SEC on Defendants' behalf while this litigation has been pending confirm counsel's active representation of Defendants. *See Carrillo*, 2025 WL 304446, at *2 (authorizing service on defendant's counsel where plaintiff had communicated with that counsel); *Makina v. Kimya Endustrisi A.S*, No. 22-cv-3933 (PGG), 2022 WL 3018243, at *1 (S.D.N.Y. July 29, 2022) (same).

Service on Defendants' established counsel is therefore "virtually guaranteed to provide notice to defendants," *In GLG Life*, 287 F.R.D. at 267, and it is appropriate for the Court to authorize it here.

### B. *Email Service is Appropriate When Defendants Use the Addresses for Business Communications.*

Courts in this Circuit routinely approve email service under Rule 4(f)(3) when the addresses are used for business. *See Red Black Tree, D.O.O. v. Hotel Credits, Inc.*, No. 22-cv-7834 (JGK) (SLC), 2024 WL 3794695, at *2 (S.D.N.Y. Aug. 13, 2024). Here, email service is

appropriate as a second method of ensuring that Defendants are notified of the Summonses and Complaint against them.[2]

Defendants use the proposed email addresses. The SEC's pre-Complaint investigation yielded over 100 documents—including materials related to the Adani Green bond offering and others dated as recently as March 2024—showing that Sagar Adani used sagar.adani@adani.com for Adani Green business. (Colorado Aff. ¶ 19.) Similarly, the SEC obtained documents confirming Gautam Adani's use of gautam.adani@adani.in for business communications, including meeting-related correspondence and concerning Adani Green, and that the same email address was listed in a submission to India's securities regulator as his contact email. (*Id.* ¶ 20.) Both addresses are reasonably believed to remain active and monitored. (*See, e.g.*, *id.* ¶ 17 (SEC counsel emailed gautam.adani@adani.in, received no bounce back notification, and was contacted by Gautam Adani's U.S. attorneys days later).)

Given Defendants' actual knowledge of this litigation—demonstrated by public statements, regulatory filings, and retention of U.S. counsel—email service to their business addresses will provide effective notice.

### C. *Defendants' Public Response and Retention of Counsel Confirms the Proposed Service Satisfies Due Process.*

Due process requires only that service be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at

---

[2] E-mail service to defendants in India does not violate any international agreement. *See In re Bystolic Antitrust Litig.*, No. 20-cv-5735, 2021 WL 4296647 (LJL), at *2 (S.D.N.Y. Sept. 20, 2011); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011).

314. Defendants' actual awareness of this action confirms that the proposed methods of alternative service satisfy this standard. *Gurung*, 279 F.R.D. at 220.

Defendants have demonstrated their actual knowledge of this action through public statements, regulatory filings, and retention of U.S. counsel. A day after the SEC's November 20, 2024 Complaint, the Adani Group (where Gautam Adani is Chairman and which includes Adani Green, where Sagar Adani is the Executive Director) issued a press release denying the allegations. (Colorado Aff. ¶ 2.) Days later, on November 27, Adani Green acknowledged the SEC's Complaint in a public regulatory disclosure. (*Id.* ¶ 3.) In April 2025, Adani Green filed another public regulatory disclosure, saying it had conducted an "independent review" of the SEC and DOJ allegations and concluded no wrongdoing occurred. (*Id.* ¶ 5.) Gautam Adani has commented publicly on this matter repeatedly, including at Adani Group's June 2025 Annual General Meeting. (*Id.* ¶¶ 4, 6.)

Defendants have also retained multiple U.S. law firms who have communicated with the SEC on Defendants' behalf during this litigation. (*Id.* ¶¶ 15-18.) Major news outlets have also reported on the SEC's allegations, Adani Group's and Gautam Adani's public responses, and the SEC's efforts to serve Defendants under the Hague Convention. (*Id.* ¶ 7.)

Taken together, these facts confirm that Defendants are fully aware of the litigation and are actively managing their response. Accordingly, service by delivery of the Summonses and Complaint to Defendants' attorneys and by email directly to Defendants is not only permissible under Rule 4(f)(3), but also fully consistent with the notice required by due process.

## CONCLUSION

For these reasons, the SEC respectfully requests an Order, in the form filed herewith, authorizing alternative methods of service by delivery of the Summons and Complaint to

9

Defendants' respective U.S. counsel and by emailing those documents directly to Defendants at their respective business addresses.

Dated: January 21, 2026 Respectfully submitted,

/s/ Christopher M. Colorado
Christopher M. Colorado
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004
Tel.: (212) 336-9143
Email: ColoradoCh@sec.gov

*Counsel for Plaintiff*
*Securities and Exchange Commission*