*** Filed ***
12:08 AM, 14 Sep, 2026
U.S.D.C., Eastern District of New York

**Ashu Shukla**
*Princeton, New Jersey*
ashu.shukla@gmail.com
T # +1-917-488-6143

**Date: 09/13/2026**

**VIA ECF**

**To,**

**Hon. Nicholas Garaufis,**
United States District Court,
Eastern District of New York,
225 Cadman Plaza East,
Brooklyn, New York 11201

**Copy**:
All Counsel of Record (via ECF)
Christopher M. Colorado
Robert J. Giuffra, Jr.

**Case**: **SEC v. Adani**, et al, 24-cv-08080-NGG-JMC (EDNY)

**Re:** Letter dated September 13th 2026

Judge,

It is unclear to me whether a Notice of Appeal has been filed on this case (**24-cv-08080**). The clerk of the court claims to have filed some documents on my behalf, but has not yet served me any such documents or filings. Please note that service of court documents is required under the Federal Rules of Civil Procedure (FRCP). Non-service violates due process norms under Federal Laws and my own First amendment rights.

Hence, the court must decide whether Notice of Appeal has been filed on this case, and if not filed, ample time should be awarded to me file the document. Plus, the court must also serve me court documents as required by law. I request the court to address this issue before the end of day

Monday September 14th 2026. This court may very well choose to address the issue, or just like Mr. McCotter, choose not to address the issue.

The case and the Judgements are a total mockery of the US Judicial System as a whole, and **reflect very poorly** on United States as a **Nation**.

**One cannot expect much** from a system [1] which is easily influenced by career scam artist and criminal deepstate actor, and continues to be influenced by the same scam artist day after day, month after month and year after year [2].

It appears that the court clerk on related matters was easily influenced by US deepstate actor, and choose to partake in deepstate actors' concocted grand scheme to safeguard her own interests. Unfortunately, the conduct cannot be simply overlooked by any rationale distant observer. Whether the conduct disqualifies you as a Judge on this matter and related matters, and whether the conduct disqualifies you from dismissing any charges can be identified later.

The following issues will be addressed by the courts in future:

US deepstate actor Joanna Rohde, who has maintained constant surveillance over me, knew that I would be filing allegations or claims under RICO on my Motion to Intervene.

Under RICO, a confession or testimony from one single cooperating witness is legally sufficient to implicate or convict others. Under the circumstances, a confession or testimony from one single

[1] I no longer see a Point in addressing a Judge as Honorable. I don't think Judges who allow career deepstate scam artists like Joanna Rohde to misuse multiple pregnancies to secure their personal interests or cover their crimes, misuse unnoticeable 1-2 month pregnant woman to enact as if they are 7-month pregnant, and then wantonly delay and deny matters have much Honor.

Similarly, I don't think Judges who continue to allow Joanna Rohde and Indian female state actors to misuse civilians on a daily basis to cover their crimes have much honor either. Such malicious state actors who have been hiding their multiple heinous crimes under the guise of pregnancy, and using the color of law to protect their personal interests must be criminally charged and punished.

[2] One may compare such actions to the acting President of Venezuela, who will collaborate with United States deepstate actors and allow Grand Theft of Epic proportions to be instituted under her watch.

cooperating witness would be legally sufficient to implicate Adani, and as such the law does not allow this court to dismiss the indictment without the prosecutor and defense cross-examining the witness at Trial. Thus, Court's Conflicting Judgements on the matters **fail as a matter of Law**: Dismissal with Prejudice on the criminal matter (24-cv-00433) and Dismissal without Prejudice (24-cr-08080) fail under RICO (Racketeer Influenced and Corrupt Organizations Act).

This is very similar to prosecution's Rule 48 Motion for leave to dismiss, which requires the DOJ to give sufficient facts and rationale to dismiss claims. Since the DOJ has given none, despite reminders, it can be construed under RICO that the court has erred in dismissing Counts Two, Three and Four on the criminal indictment (24-cv-00433).

Technically, I have 60 days to file an appeal. This 60-day period ends on September 13th 2026 for the civil matter (24-cr-08080). Since September 13th 2026 is a Sunday, the deadline moves to Monday September 14th 2026. Similarly, I have 60-days to file an appeal on the court dated August 10th 2026 which dismissed counts Two, Three and Four on the criminal matter (24-cr-00433).

In addition, the court must be mindful of the fact that DOJ attorney Mr. McCotter was appointed by the current administration, and one deepstate actor in the current administration is motivated to influence DOJ official Mr. McCotter to drop charges against Adani.

One must examine the motivation. Here, deepstate actors knew that with his political connections and financial influence, Adani could force or influence one of the several female state actors in India to confess. Especially under RICO. Had Adani chosen this route earlier, such confession would directly implicate US deepstate actor Joanna Rohde and/or her UK based female colleague.

Hence, one cannot eliminate the possibility that one of these two females made private phone call to Adani on the matter, and that they further influenced Adani not to disclose their association. (Based on my own Personal experience, these female actors have previously called me). One may further contemplate that they intended to use their communication as a leverage. What better way to entrap a person than to Lock in his signature on the docket before my right to intervene is denied!

Motivation is to tap out Adani. He cannot expose these female state actors without violating his own oath, and similarly, cannot use RICO as a tool to secure defences on his matters.

While one is always free to make non-viable financial commitments to the United States, invested parties must identify that there is no Glory in investing in the United States, especially the $10 Billion you don’t have.

In all, court's reprimand of Mr. McCotter is not enough, and would never be enough. Using her influence and strategy, it can be argued that US deepstate actor Joanna Rohde is properly set to avoid the filing of a criminal indictment against her, and avoid multiple charges based on issues not addressed on this letter. When the system allows you to manipulate outcomes based on your chosen persons like Blanche or McCotter, how can the same system be entrusted to safeguard the interests of 250 Million US Citizens and Nationals.

Here, it is also very important to understand the origins of Blanche Memorandum. Specifically, who is the Primary beneficiary of Blanche Memorandum, and how are such individuals or entities benefitting from the Blanche Memorandum. Was Mr. Blanche nominated so that he could enforce the Memorandum as US Attorney General to provide Judicial immunity to US President Trump and/or his aides.

Blanche Memorandum creates a filter, which blocks the DOJ officials from pursuing criminal charges on FCPA counts unless they serve national security interests. Specifically, Blanche Memorandum codifies the usage of National Security clause by instructing prosecutors to filter Foreign Corrupt Practices Act (FCPA) cases through the lens of "US strategic interests" and "economic competitiveness".

Both the DOJ official, Mr. McCotter, and this Court have failed to question the veracity and validity of the Blanche memorandum, and why the US Judiciary must adopt and accept the Blanche memorandum as a whole. The Court has a duty to question and investigate who benefits from the Blanche Memorandum, how and why.

The US Department of Justice must be held responsible for their actions, especially, when it can be construed that the intention of such officials and such policies is to protect the crimes of US deepstate actors.

On case# 24-cr-00433, since this Court has could not properly evaluate the credibility of remarks and decisions by DOJ official, Mr. McCotter through his letter dated July 4th 2026, and subsequently Mr. McCotter again deliberately choose to misled the court on August 11th 2026 and August 14th 2026, the dismissal of the charges against the defendants stand without proper due process or consideration given the intertwined nature of the action and the interplay between the defendants. Since the court's decision making has been disproportionately dependent on the recommendations of one current DOJ official who has failed to comply with court requirements, and not by matters of fact or law, it can be Constitutionally argued that proper decision making can only be made with the right set of evidence and facts, and not by assertions made by this individual at the Executive Branch.

Furthermore, DOJ official, Mr. Trent McCotter, has failed to clearly establish his own credibility as to why his own remarks and his own decisions in 2026 are credible, Or why his own remarks and his own decisions in 2026 are more credible than the decisions made by his predecessors or US EDNY DOJ officials in 2024.

Many other indictments and cases were filed by the same DOJ officials in similar time frame. DOJ official, Mr. Trent McCotter, Principal Associate Deputy Attorney General has failed to identify why other indictments filed during similar period by similar set of DOJ officials are or are not credible. Similarly, many FCPA claims have been filed before this court in similar time frame. Mr. McCotter has failed to clarify with sufficient specificity how this case is different, why United States has limited Jurisdiction on the matter, or how or why a case allegedly "about Indian bribing other Indians" with money secured from the United States should not be prosecuted by the United States, and why other cases by similar set of officials were credible while this was not.

Ofcourse, one must also hold the court accountable for abuse of discretion. Since court officials believe they can abuse their discretion, and years later, simply resolve the matter through a similar

action, there must be some accountability and they must be held responsible for their actions. On this particular series of abuse of discretion related to my appeals, I would demand a specific amount as penalty. Despite their so perceived Judicial immunity, the Court and DOJ can have tryouts as to who would pay such penalty, or can choose to make US deepstate actor and Indian female state actors accountable for such payments as they have chosen to fund such court matters through public or private 'accounts' or 'actions'.

One cannot simply ignore the fact that Iran did not sell Oil or Natural Gas (LPG) to Adani. Iranian assets are owned by the State, and there are no records for such transactions, and/or records that money was routed to Iran or entities in Iran. The OFAC settlement and similar issues also raise anti-trust concerns [3].

---

[3] **Anti-Trust Concerns**:

1. The United States is promoting **Monopolistic Practices**: The United States has been misusing its dominant market position to unfairly limit competition, especially from Iran.

2. **Exclusive Agreements** and **Bundling**: By forcing exclusive use of US Dollar to price commodities like Oil and natural, and requiring world-wide consumers to adopt the US dollar to transact, and also through the use of economic and financial sanctions as a means to regulate, the United States had been limiting Producer access to Global Markets (e.g. Iran, Venezuela, etc), thus limiting competition and raising prices of essential commodities globally.
    a. In this regime, it is essential to understand who benefits or progresses the most, who keeps on going unhindered, and who gets harmed or loses the most?
        i. US benefits or Progresses the Most: The regime not only gives the United States tremendous leverage over its own currency (and leverage to grow economically), but also allows the United States to export their domestic inflation to countries around the world (as countries are forced to maintain dollar reserves to purchase essential commodities, and invest in US dollar denominated debt instruments).
        ii. Countries which have a stable source of generating significant revenue in US Dollars continue unhindered. E.g. Saudi Arabia
        iii. Countries which do not have a stable source of generating revenue in US Dollars terms get harmed or loose the most.

3. **Tying Arrangements**: The United States, especially the US Government under the Trump administration, has been making use of US Dollar a <u>condition</u> for purchasing essential commodities such as Oil and Natural Gas. In fact, current US Administration led by Donald Trump has been actively threatening economic sanctions if their condition for purchasing essential commodities such as Oil and Natural Gas in US Dollars is not met. Such trying arrangements are anti-competitive by the very nature, as they limit competition.
    a. The United States fails to acknowledge or even fathom the implications of their actions. As and when other countries move away from the US dollar, the US Dollar denominated financial leverage is going to unwind. Initially, money flow back into the United States would cause asset prices to increase,

---

however, this would be followed by an economic collapse (due to lack of demand and debt pressure). Under this dollar denominated regime, the United States has become too big to fail, and has been forcing other countries to adhere to their current understanding of the world order.

b. Countries without a stable dollar denominated earnings power have witnessed severe depreciation of their currency against the US Dollar, combined with severe inflation, stagnation and limited prospects of economic revival.

4. Imagine the US Dollar as a Platform (Just like iOS on an Apple Device), and the Purchase and Sale of Commodities like Oil and Natural Gas as a Service (App on an Apple Device). There are multiple court orders and mandates in US courts which identify that controlling both the Service and the Platform, a type of **vertical integration** (such as a business which expands to different stages of the supply chain to block rivals from competing), limits competition (For instance, FTC blocked merger of Lockheed Martin & Aerojet Rocketdyne, and FTC blocked merger of Nvidia and ARM holdings).

    a. The United States Government and the Trump administration have been using their dominant position and control over the market to block competitors or providers like Iran from access to inputs or consumers, thus limiting competition. Such financial barriers or artificial creation of high barriers to entry deter competition.
    b. For instance, blocking Iran from selling commodities such as Oil or Natural Gas, to cut off competitor nations such as China or India from seeking commodities at reasonable prices is anti-competitive.
    c. Similarly, forcing competitor nations such as China or India to rely only on Oil Produced by US allies such as Saudi Arabia, or forcing competitor nations to purchase oil only in US Dollars through their US Dollar denominated Platform or through their preferred Service forces nations to share sensitive data (such as proprietary purchasing behavior, order volumes, timelines, information on facilities such as banks or financial entities / institutions, information on custodians such as organizations, individuals, and financial accounts, etc.), thereby allowing the US to aggressively anticipate rival strategies and limit competition. Such actions may also allow the US to charge them prohibitively high prices in future, or altogether block the import and use of essential commodities.
    d. Previously, United States had imposed sanctions and **unfair licensing terms** on Venezuela. Imposing restrictive licensing terms on international sale of commodities (such as oil / LPG) is regarded as a violation of US antitrust laws.

5. **Refusal to Deal**: The United States has denied access to US Dollar denominated funding or essential facilities (or services) to competitors, especially Iran. This action is anti-competitive by the very nature both from a Producer and a Consumer standpoint, especially for commodity rich producer nation like Iran.
    a. By instituting market foreclosure on commodity rich producer nation like Iran, United States has hampered competition and intentionally led to price increases and inflation. Such actions impact nations without a significant dollar denominated earnings power way more than the United States itself.
    b. Though discriminatory Practices, like favoring close US allies against commodity rich producer competitor nations like Iran, the United States has violated US antitrust laws.
    c. Through their OFAC enforcement directive and subsequently allowing AEL to write off $275 Million as business losses, the United States has shown that their Judicial outreach on SEC and similar matters is either not sufficient, not comprehensive or both. United States has neither sanctioned any US ally, or any US financial institution who participated.

**/s/ ashu shukla**

**Ashu Shukla**
202 Salem Ct, Apt# 11,
Princeton, NJ 08540
ashu.shukla@gmail.com
T # +1-917-488-6143